IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

LISA Y. KASEY,                          )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )        Civil Action No. 7:14–CV–143
                                        )
CAROLYN W. COLVIN,                      )
Acting Commissioner of Social Security, )
                                        )
                    Defendant.          )


## REPORT AND RECOMMENDATION

Plaintiff Lisa Y. Kasey ("Kasey") challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Kasey alleges that the Administrative Law Judge ("ALJ") erred by giving no weight to her treating physician's opinion, failing to consider her impairments alone and in combination, inadequately evaluating her mental impairments under SSR 96-8p, and incorrectly discounting her credibility and pain complaints. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Kasey's Motion for Summary Judgment (Dkt. No. 16), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 18.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Kasey failed to demonstrate that she was disabled under the

Act.[1]  See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Kasey filed for SSI on January 27, 2011, claiming that her disability began on November 1, 2010. R. 185-91.  The Commissioner denied the application at the initial and reconsideration levels of administrative review.  R. 58-67, 68-78.  On April 16, 2013, ALJ Joseph T. Scruton held a hearing to consider Kasey's disability claim. R. 30-57.  Kasey was represented by an attorney at the hearing, which included testimony from Kasey and vocational expert Robert Jackson.  Id.

On April 26, 2013, the ALJ entered his decision analyzing Kasey's claim under the familiar five-step process, and denying her claim for benefits.[2]  R. 12-29.  The ALJ found that

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work.  Rather, a claimant must show that her impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience.  See 42 U.S.C. §1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask,  in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 416.920(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

Kasey suffered from the severe impairments of diabetes mellitus, neuropathy, vision disorder–

history of cataracts, asthma, obesity, lumbar degenerative disc disease, bipolar disorder, and

major depressive disorder. R. 17. The ALJ found that these impairments, either individually or

in combination, did not meet or medically equal a listed impairment. R. 17-20. The ALJ

determined that Kasey retained the residual functional capacity ("RFC") to perform sedentary

work, with the following exceptions:

> In an 8-hour workday, the claimant can sit 6 hours and stand/walk
> 2 hours, with the option to alternate sitting with standing for 2 to 3
> minutes at her workstation 1 to 2 times between scheduled breaks.
> She can only perform occasional stooping and kneeling. She can
> perform frequent, but not constant, handling and fingering. She
> cannot have exposure to respiratory irritants. She cannot work
> around heights and must avoid exposure to hazards. She cannot
> perform driving tasks. With her glasses, she can read ordinary size
> but not fine print. She is limited to simple, 1 to 2 step works. She
> can understand, remember and carry out short tasks for an 8-hour
> workday, can adapt to routine work changes, and can interact
> appropriately with supervisors, coworkers and the public.

R. 20. Given the above RFC, the ALJ determined that Kasey could not return to her past

relevant work as a warehouse worker-laborer (R. 23), but that Kasey could perform other jobs

that exist in significant numbers in the national economy such as a production worker or material

handler. R. 24. Thus, the ALJ concluded that she was not disabled. R. 25. On February 19,

2014, the Appeals Council denied Kasey's request for review (R. 1-8), and this appeal followed.

## ANALYSIS

Kasey argues that the ALJ erroneously gave no weight to her treating physician's

opinion, failed to consider her impairments alone and in combination, inadequately evaluated her

mental impairments, and improperly discounted her credibility and pain complaints. Having

reviewed the record, I find that substantial evidence supports the ALJ's decision on each ground.

3

## A. **Treating Physician Opinion**

Kasey claims that substantial evidence does not support the ALJ's decision because the ALJ erred by giving "no weight" to the opinion of her treating physician, George Wagner, M.D. Kasey limits her argument to Dr. Wagner's opinion regarding her diabetic neuropathy. Dkt. No. 16, p. 15-16. Dr. Wagner completed a four-page checkbox-based medical source statement on October 25, 2012, diagnosing Kasey with severe neuropathy and finding that she can occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, and sit, stand, or walk less than two hours in an eight-hour workday. R. 321-24. Dr. Wagner gave the opinion that Kasey's pushing and pulling abilities were affected by an unspecified impairment, and recommended postural and manipulative limitations because Kasey "has severe loss of sensation in her feet" and is "[b]alance impaired." R. 322-23. Dr. Wagner checked that Kasey had unlimited reaching, handling, and fingering abilities, while at the same time checking that she only can occasionally reach, handle, or finger. R. 323. He also gave the opinion that Kasey had limited ability to feel in her feet. R. 323. Dr. Wagner provided no record support for his conclusions.

A treating physician's opinion is not automatically entitled to controlling weight. The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. See id.; Saul v. Astrue, Civ. Action No. 2:09-cv-1008, 2011 WL 1229781 (S.D. W.Va. March 28, 2011). If the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the

following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010). While the regulations require the ALJ to consider all five factors, the ALJ is "not required to make a seriatim assessment as if it were a sequential evaluation." Vaughn v. Astrue, No. 4:11-cv-29, 2012 WL 1267996, at *5 (W.D. Va. Apr. 13, 2012).

Substantial evidence supports the ALJ's decision to give no weight to Dr. Wagner's medical source statement. The ALJ rejected Dr. Wagner's opinion because his diagnosis and restrictions were based primarily on Kasey's subjective complaints and were inconsistent with his progress notes and the rest of the evidence. R. 22. In a detailed discussion of Dr. Wagner's progress notes, the ALJ explained that his opinion that Kasey suffered from neuropathy for years was unsupported; Dr. Wagner only diagnosed Kasey with neuropathy in August 2012 and did not note neuropathic symptoms prior to that appointment. R. 22-23. The ALJ also observed that Dr. Wagner's treatment recommendations were for physical therapy and diabetic education, and not for more intensive assessments such as nerve conduction studies. R. 23.

As a general care provider, Dr. Wagner's progress notes cover a range of ailments but rarely mention neuropathy. From May 2010 through July 2012, Kasey regularly received treatment from Dr. Wagner for back pain, hypertension, GERD, thyroid atrophy, and a number of other medical issues–none of which were neuropathy. See, e.g., R. 265-70, 308-14, 474-90.

Kasey's only possible evidence of neuropathy during this time period were subjective complaints of burning and tingling pain in her left leg in October 2010, and complaints of pain in her left upper side and burning in her legs and forehead in July 2011.[3]  R. 261-62, 308-09.  Kasey was diagnosed with the cause of her neuropathy–diabetes mellitus type II–in September 2011.  R. 488-89.  During an August 14, 2012 appointment, Dr. Wagner first noted "painful neuropathy" as a diabetic complication and directed Kasey to take Neurontin for her "burning feet."  R. 476-78.  Dr. Wagner increased Kasey's prescription for Neurontin due to continued neuropathic pain in October 2012 (R. 474-75) and ultimately changed her prescription to Effexor in December 2012.  R. 509-510.  His progress notes do not include any other references to neuropathy or indicate functional limitations stemming from the impairment.

The remainder of the record suggests that Kasey developed neuropathy by 2011, but not to the degree suggested by Dr. Wagner.  Kasey first complained of tingling and pain in her left fingers at Roanoke Memorial Hospital in October 2009.  R. 393-95.  In April 2010, Kasey mentioned burning in her lower back that radiated down her leg to Andre Douglas, FNP; she reported that the nerve pain resulted from "a car accident that caused compression on her nerves"–not diabetic neuropathy.  R. 271.  An October 24, 2011 treatment note from Roanoke Memorial Hospital noted "neuropathic pain syndrome" in her history of ailments, but did not provide any neuropathy-related treatment.  R. 441.  On November 12, 2011, Christine Leanne Young, M.D. of Roanoke Memorial Hospital directed Kasey to follow-up with her primary care provider for "neuropathic sounding pain to her left face and leg."  R. 454.  Dr. Young found her neurological exam unremarkable, but prescribed her Neurontin.  Id.  During a February 26, 2013

_____

[3] On the advice of Dr. Wagner, Kasey attended physical therapy from August through mid-September 2011.  R. 344-77.  Nathanial K. Gay, PT described Kasey's condition as back pain and "burning pain down left leg" resulting from a 1994 car crash.  R. 345.  The physical therapists never noted a diagnosis of neuropathy.  Despite improvement in her condition, Kasey was removed from the physical therapy program because she violated the office's "no-show" policy and insufficiently followed-up on her treatment.  R. 377.

6

visit to Roanoke Memorial Hospital, Kasey complained of "burning/tingling in bilateral lower extremities." R. 514. Kasey did not receive any other neuropathy-related treatment or assessments.

William Humphries, M.D. performed a consultative physical examination on May 6, 2011, noting complaints of back pain resulting from a car crash in 1994. R. 298. Although Dr. Humphries found Kasey had mildly reduced range of motion in her back and lower extremities, some discomfort, and complaints of intermittent burning in her left lower extremity, his objective neurologic and extremity findings were unremarkable and did not include a diagnosis of neuropathy. R. 298-301. The state agency physicians similarly did not recognize any neuropathic limitations, or even mention a long history of neuropathy. R. 63-64, 73-75.

The only evidence that supports Dr. Wagner's medical source statement is Kasey's testimony from the ALJ hearing. Kasey testified that she suffers from numbness and tingling in her hands and feet, as well as radiating pain down her legs and left side. R. 41-42, 49-50. The pain causes her to be unable to sit or stand for more than fifteen minutes without experiencing a burning sensation in her legs. R. 41. Kasey's subjective statements, without further support in the medical record, cannot support Dr. Wagner's opinion alone.

Upon reviewing the entire record, the ALJ's decision to give no weight to Dr. Wagner's opinion is supported by substantial evidence. Dr. Wagner's medical source statement does not explain why Kasey's neuropathy causes his recommended limitations. R. 321-24. Dr. Wagner only states a diagnosis of severe neuropathy and symptoms of loss of sensation, balance impairment, and weakness; he does not provide any support for why he has come to these conclusions or what limitations he has required of her during his years of treatment. R. 322-24. Although Dr. Wagner treated Kasey in his general practice for years, his opinion regarding

Kasey's neuropathy is not one of a specialist and is unsupported by his own records and the rest of the administrative record. Given that Kasey was diagnosed with diabetes in September 2011 and neuropathy in August 2012, Dr. Wagner's statement that Kasey suffered from neuropathy for years is unsupported by the record. Kasey did not even allege neuropathy on her initial application for benefits, or claim the diabetes that caused the neuropathy.[4] R. 206. Moreover, Dr. Wagner's medical source statement is a checkbox-based form; courts in the Fourth Circuit have recognized the limited probative value of such checkbox opinion forms. See Leonard v. Astrue, No. 2:11cv00048, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Such check-the-box assessments without explanatory comments are not entitled to great weight, even when completed by a treating physician."). Ultimately, Dr. Wagner's notes and the surrounding record only support a finding of a severe impairment and not resulting functional limitations.

Given the evidence set forth above, I find substantial support for the ALJ's decision not to adopt the restrictive limitations set forth by Dr. Wagner.

### B. Combined Effect of Impairments

Kasey asserts that the ALJ failed to evaluate the combined severity of her impairments as required by the regulations. Dkt. No. 16, p. 16-17. Specifically, Kasey argues that the ALJ did not account for Dr. Wagner's recommended limitation about her ability to reach, handle, and finger. Where a claimant has multiple impairments, the ALJ must consider the combined effect of those impairments in determining whether the claimant is disabled. See 20 C.F.R. § 404.1523; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose

---

[4] The July 6, 2011 disability report for her appeal listed "[d]iabetes affecting my eyes" and "[b]urning feeling in my limbs" as a change in her condition since her last disability report. R. 212; see also R. 241.

total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity." Walker, 889 F.2d at 50. In addition to "not fragmentiz[ing]" the effect of the claimant's impairments, "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id. at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)). However, "an ALJ need not explicitly state that he or she has considered a claimant's impairments in combination. What matters is whether it is discernible from the ALJ's decision that he or she did so." Jones v. Astrue, Civ. Action No. 7:10cv00313, 2011 WL 1877677, at *12 (W.D. Va. May 17, 2011).

The ALJ explicitly found in his opinion that Kasey did not have an impairment or combination of impairments that met one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R. 17-20. Furthermore, the ALJ's written opinion reveals that he thoroughly considered all of the evidence relating to Kasey's alleged physical and mental impairments when developing an RFC and finding Kasey not disabled. The ALJ's review of the medical evidence was not fragmented, but presented a balanced approach that addressed the symptoms of Kasey's neuropathy, back problems, obesity, lower extremity impairments, and mental health impairments in an integrated manner. R. 23. It is apparent from the RFC itself that the ALJ accounted for the cumulative impact of Kasey's impairments as supported in the record, providing restrictions that are both mental (e.g., simple one-to-two step tasks) and physical (e.g., standing/walking for two hours maximum). R. 20.

Moreover, the ALJ addressed Kasey's targeted limitation about her ability to reach, handle, and finger. Dr. Wagner's opinion is the source of Kasey's argument for manipulative limitations. R. 323. The ALJ generally wrote about Dr. Wagner's records both at step three and in his development of the RFC; he further addressed Dr. Wagner's opinion–including his

9

recommendation about occasional fingering, handling, and reaching–when explaining the RFC. R. 18-19, 21-23. The ALJ considered the impact of this limitation at all stages in his analysis and allowed for frequent fingering, handling, and reaching in his RFC. Given that the ALJ gave Dr. Wagner's opinion no weight, and that Dr. Wagner's opinion regarding manipulative limitations was conflicting,[5] the ALJ reasonably considered the combined effects of all of Kasey's impairments–including her manipulative restrictions. Moreover, Dr. Humphries's opinion did not include any manipulative limitations. R. 298-301.

The ALJ reviewed all of the evidence, considered Kasey's manipulative limitation, and limited her to "frequent, but not constant, handling and fingering" in the RFC. R. 20. Kasey points to nowhere in the record that supports a limitation to only occasional handling and fingering other than Dr. Wagner's medical source statement, and otherwise does not argue that the ALJ failed to consider the combined effect of her impairments. Therefore, I find that the ALJ did not fail to analyze the combined effect of Kasey's medical impairments.

## C. Mental Limitations

Kasey argues that the RFC determined by the ALJ did not properly account for her moderate limitations with concentration, persistence, or pace. Kasey provided no facts in support of her assertion and submitted few mental medical records in pursuit of her claim.

The record first shows Kasey's pursuit of mental health treatment in June and July 2011, when Dr. Wagner noted a depressed mood and no notable improvement with medication. R. 308-10. Beginning in September 2011, Kasey met with Molly Sharp, PA-C at the Center for Emotional Care in Salem to address mood swings and depression. R. 504-08. She continued

---

[5] Dr. Wagner's opinion provides conflicting information about manipulative limitations. R. 323. Dr. Wagner checked that Kasey has unlimited ability to reach in all directions, handle, and finger; however, in the next set of checkboxes, Dr. Wagner marked that she can occasionally reach, handle, or finger. Id. Dr. Wagner's medical source statement does not provide any support for these opinions regarding Kasey's manipulative limitations; neither do his progress notes or the rest of the administrative record.

treatment with Dr. Wagner in September as well, where he noted depression and thoughts of self-harm following a depression screening. R. 488-89. Kasey complained of depression, hallucinations, and fluctuating mood to Ms. Sharp in October 2011, November 2011, and April 2012. R. 500-03. In November 2011 and continuing occasionally through June 2012, Kasey received counseling services at Comprehensive Counseling Services and received treatment for various symptoms including hallucinations, depression, panic attacks, and insomnia. R. 327-43. The Center for Emotional Care terminated its patient relationship with Kasey in June 2012 for noncompliance. R. 499.

State agency consultant Jo McClain, PC reviewed Kasey's records on May 16, 2011, and found that she did not suffer from any mental impairments. R. 61-62. Michelle Butler, Psy.D. also reviewed Kasey's mental health records as a state agency consultant on August 17, 2011. R. 72. She found that Kasey had no mental medically determinable impairments and that her allegations were not credible based on her self-reported abilities. Id. The ALJ gave their reports limited weight because they did not have access to Kasey's medical records. R. 23. In her disability report on appeal, Kasey reported receiving mental health support from Dominion Day Services and seeing both a psychiatrist and counselor. R. 245. At the hearing before the ALJ, Kasey testified that she suffers from depression and does not feel capable of "seeing or doing anything." R. 46. The record otherwise is devoid of mental health records.

Based upon the records and opinions summarized above, the ALJ determined that Kasey was capable of completing simple one to two step tasks and possessed the abilities to understand, remember, and carry out short tasks throughout an 8-hour workday, adapt to routine work changes, and interact appropriately with supervisors, coworkers, and the public. R. 20.

### a. **Discussion of Mental Impairments**

Kasey first argues that "simply limiting [Kasey] to simple, 1 to 2 step work without further narrative discussion of [Kasey's] mental RFC, falls short of the requirements found in SSR 96-8p."[6] Dkt. No. 16, p. 17. Kasey correctly states that Social Security Ruling ("SSR") 96-8p requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. See SSR 96-8p, 1996 WL 374184; Teague v. Astrue, No. CA 1:10-2767-MBS-SVH, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p at *7; Meadows v. Astrue, No. 5:11CV00063, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. JKS 09-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 16, 2010)).

Here, the ALJ's discussion of Kasey's mental limitations satisfies the requirements of SSR 96-8p. The ALJ considered both medical and non-medical evidence in assessing Kasey's RFC and provided the narrative discussion required by the regulations. The ALJ noted the history of Kasey's mental symptoms, and reviewed her mental health treatment in detail. R. 21. The ALJ reviewed Kasey's Function Report, her testimony, and mental health progress notes from Comprehensive Counseling Services and the Center for Emotional Care. Id. The ALJ also

---

[6] To the extent that Kasey argues that the ALJ should have conducted a "function-by-function" analysis for his mental impairments, the Fourth Circuit recently grappled with function-by-function analyses in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Although the Mascio Court declined to accept a per se rule requiring remand where the ALJ does not perform an explicit function-by-function analysis, the court did find that "[r]emand may be appropriate... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). In Mascio, the court remanded the claim because the ALJ did not address whether the claimant could perform certain functions throughout the full workday or address conflicting evidence in the record which prevented meaningful review. Id. "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14-CV-76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015). Here, the ALJ's decision contains sufficient information to allow meaningful review.

12

reviewed and considered the state agency consultants' opinions relating to Kasey's mental impairment. R. 23. Given the ALJ's consideration of medical opinions, the claimant's testimony, and evidence of mental impairment, which he documented through a narrative discussion, the court is capable of meaningfully reviewing the RFC; thus, the ALJ met the requirements of SSR 96-8p. See Taylor v. Astrue, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012).

### b. Concentration, Persistence, and Pace

Kasey also argues that the RFC restriction of "simple, 1 to 2 step work"[7] does not properly account for her moderate impairment with concentration, persistence and pace. Dkt. No. 16, p. 17-20. As a result of this alleged inadequacy, Kasey contends that the ALJ did not pose a hypothetical question that included the moderate limitations of maintaining concentration, persistence, and pace to the vocational expert.

In Mascio v. Colvin the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at 638; see also Sexton v. Colvin, 21 F. Supp. 3d 639, 642–43 (W.D. Va. 2014) (citing Wiederholt v. Barnhart, 121 F.App'x 833, 839 (10th Cir. 2005) (holding that a "limitation to simple, unskilled work does not necessarily" accommodate a person's difficulty in concentrating on or persisting in a task, or maintaining the pace required to complete a task). In Mascio, the Fourth Circuit found that the ALJ did not

---

[7] Kasey argues that the ALJ restricted her to "unskilled work" as well. Dkt. No. 16, p. 20. This appears to be a typographical error in the brief because the ALJ did not limit Kasey to unskilled work. R. 20. The ALJ restricted Kasey to "simple, 1 to 2 step work" and asked the vocational expert a hypothetical with that restriction. R. 52-53. The ALJ later referred to this type of work as "unskilled" to the vocational expert (R. 55), but this description appears to reference the one-to-two step task restriction and was not included in the RFC.

explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC. The court noted, however, that the ALJ may find that the concentration, persistence, or pace limitation would not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. See 780 F.3d at 638; see also Hutton v. Colvin, Civ. Action No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015).

Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. The ALJ has the responsibility to address the evidence of record that supports that conclusion.

The Mascio court relied upon Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011), where the court rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. However, the Winschel court explained that:

> when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. (internal citations omitted). Courts within the Fourth Circuit have come to rely upon Winschel's reasoning to comply with Mascio. See Gardner v. Colvin, No. CIV. TMD 14-100, 2015 WL 1508835, at *8 (D. Md. Mar. 31, 2015).

14

The Winschel court relied upon several other circuits which have held that an ALJ may exclude a moderate limitation in concentration, persistence, and pace from either the RFC or the hypothetical presented to the vocational expert where the evidence reflects that the claimant can perform simple, unskilled work. See Simila v. Astrue, 573 F.3d 503, 521–22 (7th Cir. 2009); Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1173–76 (9th Cir. 2008); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001); see also Wiederholt v. Barnhart, 121 Fed. App'x 833 (10th Cir. 2005). Additionally, other circuits have held that an ALJ may adequately address a claimant's limitations in concentration, persistence, and pace through hypothetical questions presented to the vocational expert which include evidence or opinions that account for these limitations. See e.g., Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001) (finding that the ALJ did not err by failing to include deficiencies in concentration, persistence, or pace where the hypothetical incorporated concrete restrictions identified by examining psychiatrist regarding quotas, complexity, and stress).

For example, in Stubbs-Danielson v. Astrue, the court affirmed the RFC which limited the claimant to "simple, routine, repetitive sedentary work, requiring no interaction with the public" despite having moderate limitations in concentration, persistence, or pace where the state agency reviewing psychologist found that despite the claimant's slow pace and moderate limitations in other mental areas, she retained the ability to carry out simple tasks. See 539 F.3d at 1173–76. Likewise, in Howard v. Massanari, the court explicitly rejected a claim that an ALJ's hypothetical describing an ability to do "simple, routine, repetitive work" failed to capture deficiencies in concentration, persistence, or pace, where the state agency psychologist concluded that the claimant, despite certain pace deficiencies, retained the ability to do simple, repetitive, routine tasks. See 255 F.3d at 582.

Thus, Mascio reiterates the long-held proposition that substantial evidence in the record must support the limitations contained in the RFC and included in the hypothetical question presented to the vocational expert. An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Here, ample evidence exists to support the ALJ's conclusion that Kasey is capable of performing simple, one-to-two-step tasks despite her moderate limitation in concentration, persistence, or pace. None of the medical records note any limitation in Kasey's concentration, persistence, or pace. No medical opinions recommend limitations in concentration, persistence, or pace. The ALJ appears to have given Kasey the benefit of the doubt in assessing this functional limitation based on her receipt of minimal counseling and medication. Kasey herself did not complain of concentration problems at her hearing before the ALJ; her primary complaints were of insomnia, social problems with her family, and depression. The medical records do not show evidence of this limitation, and Kasey has not identified additional limitations that should have been included in the RFC.

Further, this is not a situation where the hypothetical question given to the vocational expert did not include all the limitations ultimately found to exist by the ALJ in his opinion. The ALJ went further than just asking about a hypothetical ability to perform unskilled work, but instructed the vocational expert to consider the individual's ability to "understand, remember, and carry out short, simple instructions, tasks involving short, simple instructions," and the individual's ability to adapt to routine work changes where tasks involved short, simple

instructions. R. 53. Based on this hypothetical, which included detailed information about how an individual with Kasey's limitations could work throughout the day, the vocational expert testified that Kasey could perform jobs in the national economy such as a general production worker or material handler. R. 54. The vocational expert did not indicate that he was rejecting, or in any way failing to consider, any portion of the detailed hypothetical. Additionally, counsel for Kasey was present at the hearing and did not indicate any concern that the vocational expert was being presented with an inaccurate summary of Kasey's functional limitations. R. 55.

Thus, given Kasey's mild medical record, lack of medical opinion supporting her difficulties in concentration, persistence, or pace, and the ALJ's detailed hypothetical, substantial evidence supports the ALJ's RFC and the hypothetical question presented to the vocational expert. There is no evidence in the record that suggests that Kasey's moderate impairment with concentration, persistence, or pace would prevent her from completing a normal workday or workweek without interruption or completing work activities on a consistent basis. None of the medical records or opinions suggested that Kasey could not perform work composed of simple, one-to-two step tasks due to concentration, persistence, or pace problems. See Claiborne v. Comm'r, No. SAG-14-1918, 2015 WL 2062184, at *3 (D. Md. May 1, 2015) (citing Dean v. Comm'r, No. SAG-14-1127, 2015 WL 1431548, at *1–2 (D. Md. Mar. 26, 2015) (ALJ appropriately limited claimant to simple, repetitive, routine tasks where claimant remained persistent throughout the mental functioning testing process and was able to sustain attention).

Thus, this is not a situation where the ALJ summarily concluded that a limitation of work involving simple, one-to-two step tasks accounts for Kasey's moderate impairment in concentration, persistence, and pace with no further analysis or consideration. Rather, the medical evidence overwhelmingly supports the conclusion that despite her moderate limitation in

17

concentration, persistence, or pace, Kasey is capable of performing the basic mental demands of simple, one-to-two step work. Considering the record as a whole, the ALJ determined that while such limitations existed, they did not preclude Kasey from performing simple one-to-two step tasks. Consequently, I find that Kasey's assertion that the ALJ erred by failing to properly account for her limitations in concentration, persistence, and pace is without merit.

### D. Credibility Determination

Kasey lastly contends that the ALJ failed to properly consider her credibility and pain complaints. Kasey argues that the medical evidence corroborates her allegations of pain, and that the ALJ's cited testimony and daily activities are "not inconsistent" with her allegations of disability. Dkt. No. 16, p. 22. Kasey's arguments consist of nothing more than facial disagreements with the ALJ's conclusions.

After a thorough review of Kasey's treatment records and allegations of disability, the ALJ stated:

> [t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. The objective medical evidence, the claimant's treatment history, and the claimant's daily activities do not fully support her allegations on the severity of her functional limitations.

R. 21. The ALJ then reviewed the activities listed in Kasey's Function Report, her mental health progress notes, her physical treatment records, and her testimony regarding daily activities. R. 21-23. The ALJ also pointed to a doctor's note of Kasey's "malingering" with suddenly disappearing symptoms at the Roanoke Memorial Hospital Emergency Room in April 2011, as well as her discharge from physical therapy due to insufficient follow-up. R. 22.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Kasey's subjective allegations of disabling impairments and pain are not conclusive. Rather, the

ALJ must examine all of the evidence, including the objective medical record, and determine whether Kasey met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. See Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Kasey's ability to work. Id. at 594–95.

In this case, the ALJ recognized that Kasey suffers from severe impairments that cause her to experience limitations. The issue is not whether Kasey has limitations, but whether those limitations are so severe as to be disabling. The ALJ found that Kasey's statements regarding disabling limitations and pain are not entirely credible because they are not supported by the objective medical evidence, her treatment history, and her reported daily activities. R. 21. The ALJ included a detailed analysis of Kasey's treatment records in his opinion in support of this conclusion. R. 20-23.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). "The ALJ… is not required to accept a claimant's testimony about her symptoms at face value; rather he is to weigh such testimony along with all of the evidence, including not only the objective medical evidence, but statements and other information provided by physicians or psychologists and other persons about her symptoms and how they affect her and any other relevant evidence in the case record." Meadows v. Astrue, No. 5:11CV00063, 2012 WL 3542536, at *9 (W.D. Va. Aug. 15, 2012) (citing SSR 86-7p). Further, a reviewing court will defer to the ALJ's credibility

finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (citing Edelco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

After a review of the record as a whole, I find that substantial evidence provided by the medical opinions, the treatment records, and Kasey's testimony supports the ALJ's determination that her testimony is only partially credible, and that Kasey is capable of performing the range of sedentary work set forth in the ALJ's opinion. The medical record demonstrates that Kasey suffers from a number of impairments, but lacks the severity in treatment or doctor-recommended limitations to support her allegations of pain and functional limitation. Notably, Kasey does not dispute the evidence cited by the ALJ in support of his credibility finding. Instead, Kasey contends that her activities of daily living are "not inconsistent" with her allegations of disability, and that the ALJ misunderstood how much she must rely on others for support. Assuming this is so, it is no basis for remand. Perdue's daily activities–both with assistance and without–bear on her ability to function in a vocational setting and may properly be considered by an ALJ. See 20 C.F.R. §§ 404.1529(c)(3)(i), 404.1572(c). Moreover, the ALJ's findings are clearly supported by a psychiatric progress note from the Center for Emotional Care from April 2012, where Ms. Sharp noted that Kasey reported she wished to seek part-time work, but her lawyer advised her she could not work because it may "mess up" her disability case. R. 500. Such allegations–regardless of their truth on behalf of Kasey's attorney–raise credibility concerns.

The issue on appeal is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of

Case 7:14-cv-00143-MFU-RSB   Document 22   Filed 08/14/15   Page 20 of 21   Pageid#: 658

disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard–defined as more than a mere scintilla but perhaps somewhat less than a preponderance– is met, I cannot recommend reversing the ALJ. See Craig, 76 F.3d at 589.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: August 14, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

21